ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
ROSALEEN O'GARA
Arizona State Bar No. 029512
JANE L. WESTBY
Arizona State Bar No. 017550
Assistant U.S. Attorneys
U.S. Attorney's Office
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: rosaleen.ogara@usdoj.gov
Email: jane.westby@usdoj.gov
Attorneys for Plaintiff

FILED
2018 OCT -3 PM 5:57
CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

JGZ(BPV)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CR18-2001TUC

| United States of America, | INDICTMENT |
|---|---|
| Plaintiff, | Violations: |
| vs. | 18 U.S.C. § 1343 (Wire Fraud) (Counts 1-10) |
| Elvira Contreras, | 18 U.S.C. § 1028A(a)(1) (Aggravated Identity Theft) (Counts 11-17) |
| Defendant. | |

VICTIM CASE

SEALED

**THE GRAND JURY CHARGES:**

**Introductory Allegations**

At all times material to this indictment:

1.  The Defendant, ELVIRA CONTRERAS ("Defendant"), lived in Tucson, Arizona, in the District of Arizona.

2.  D.L. is an attorney in Tucson, Arizona, practicing immigration law.

3.  Defendant never worked with or for attorney D.L.

## The Scheme to Defraud

4. Beginning on or about June, 2015, and continuing through April, 2018, Defendant, ELVIRA CONTRERAS, with the intent to defraud, knowingly and willfully devised and intended to devise a scheme to defraud others to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and with the intentional concealment of material facts, as follows:

5. In furtherance of the scheme to defraud, beginning on or about June, 2015, and continuing through on or about April, 2018, Defendant knowingly, and with the intent to defraud, made materially false and fraudulent representations and promises that she could obtain U.S. immigration documents and other documents, such as a contractor's license or driver's license, in exchange for a fee when Defendant knew that she could not and would not provide U.S. immigration documents or other documents as promised to the victims.

6. In furtherance of the scheme to defraud Defendant made materially false and fraudulent representations and promises to others, including, but not limited to L.R.M., F.C.M, A.R.G., B.M.L. (collectively, "the victims"), and an undercover law enforcement agent ("UC Agent"), that she could obtain U.S. immigration documents because: 1) she worked for U.S. Immigration and Customs Enforcement (ICE); 2) she knew or worked with immigration attorney D.L.; or 3) she was immigration attorney D.L.

7. As further part of the scheme to defraud L.R.M. and F.C.M., on or about June, 2017, Defendant made a materially falsely and fraudulent representation and promise to L.R.M. and F.C.M. that attorney D.L. would represent F.C.M. in a legal matter for a fee.

8. As further part of the scheme to defraud L.R.M. and F.C.M., on or about September 17, 2016, Defendant made a materially false and fraudulent representation and promise to L.R.M. and F.C.M. that Defendant could obtain

$100,000 in federal and $70,000 state tax refunds for L.R.M. and F.C.M. in exchange for $11,000.

As further part of the scheme to defraud:

**L.R.M. & F.C.M.**

9. Beginning on or about February, 2015, L.R.M. knew Defendant as a Tarot Card reader and someone who did blessings and cleansings of residences. L.R.M. has paid Defendant for these services.

10. On or about June, 2015, Defendant made a material false and fraudulent representation and promise to L.R.M. that Defendant had a U-visa and that Defendant could add L.R.M. to the U-visa for a fee.

11. Defendant made a material false and fraudulent representation and promise to L.R.M. that Defendant worked with an immigration attorney named D.[L.] who could obtain U.S. immigration documents.

12. On or about June, 2015, L.R.M. paid Defendant $1,500 in cash to be added to Defendant's U-Visa; Defendant falsely told L.R.M. that Defendant would give the money to attorney D.L.

13. On or about July, 2015, after L.R.M. questioned Defendant about obtaining the immigration documents, Defendant took L.R.M. and F.C.M. to attorney D.L.'s office; Defendant spoke with attorney D.L's assistant, while F.C.M. and L.R.M. waited in another area. F.C.M. and L.R.M. never spoke to or met D.L. on that day.

14. On or about July, 2015, Defendant made a materially false and fraudulent representation and promise to L.R.M. that L.R.M.'s husband, F.C.M. could also be added to Defendant's U-Visa for a fee.

15. On or about August, 2015, L.R.M. paid Defendant $1,500 in cash to add F.C.M. to Defendant's U-Visa.

16. Between on or about the following dates, L.R.M. paid Defendant the following approximate amounts after Defendant made materially false and fraudulent representations and promises to L.R.M. and F.C.M. that Defendant would obtain U.S. immigration documents for them, make them U.S. citizens, and obtain a contractor's license for F.C.M., as further described below:

| Date | Approximate Amount | Payment for: |
| --- | --- | --- |
| June 2015 through December 2015 | $7,500 | U-Visa |
| January 2016 through March 2016 | $4,500 | U-Visa |
| April 2016 through June 2016 | $3,000 | U-Visa |
| July 2017 | $6,000 | U.S. Citizenship |
| July 2017 | $3,000 | Contractor's License |

17. On or about September, 2016, Defendant gave L.R.M. and F.C.M. each a fraudulent document which appeared to contain valid Social Security Numbers assigned to each of them.

18. However, the numbers on the two documents described above were not Social Security Numbers assigned by the U.S. government to either L.R.M. or F.C.M.

19. On or about September, 2016, L.C.M. paid Defendant an additional $11,000 after Defendant made a materially false and fraudulent representation and promise to L.R.M. and F.C.M. that Defendant could obtain $100,000 in federal and $70,000 in state tax refunds for them in exchange for the $11,000.

4

**Defendant's False Promises to Obtain Legal Representation for F.C.M.**

20. On or about June 18, 2017, Defendant made a materially false and fraudulent representation and promise to L.R.M. and F.C.M. that Defendant knew an attorney who could represent F.C.M. in a legal matter, that the attorney's name was D.L., and that D.L. would be present at F.C.M.'s court hearing on June 28, 2017.

21. Between on or about June 17, 2017, and on or about June 24, 2017, F.C.M. paid Defendant, a total of approximately $8,600 for legal representation for F.C.M.

22. On or about June 28, 2017, no attorney was present at F.C.M.'s court hearing to represent him, and the hearing was rescheduled to August 2, 2017.

23. Between on or about June 28, 2017, and on or about August 2, 2017, Defendant went to the house of F.C.M. and L.R.M. with an individual who Defendant falsely claimed was attorney D.L.

24. At the above meeting, Defendant assured L.R.M. and F.C.M. that attorney D.L. would be present at F.C.M.'s rescheduled court hearing on August 2, 2017; Defendant asked L.R.M. and F.C.M. for an additional $4,500 for those legal services.

25. On or about July 29, 2017, F.C.M. paid the additional $4,500 for those legal services.

26. On or about August 2, 2017, no attorney arrived to represent F.C.M. at his rescheduled court hearing; F.C.M. subsequently learned that the person Defendant alleged was attorney D.L. is not attorney D.L.

27. On or about August 7, 2017, after L.R.M. confronted Defendant about Defendant's failure to provide L.R.M. and F.C.M. with any documents or legal assistance, Defendant told L.R.M. that she could never prove that L.R.M. gave Defendant any money.

28. L.R.M. and F.C.M. never received any U.S. immigration documents, a general contractor's license, or legal services from Defendant.

**A.F.G.R.**

29. A.F.G.R. met Defendant through friends, L.R.M. and F.C.M. A.F.G.R. worked with F.C.M.

30. On or before July 14, 2017, L.R.M. and F.C.M. told A.F.G.R. that Defendant worked with an immigration attorney named D.[L.] who could obtain the U.S. immigration documents.

31. On or before July 14, 2017, A.F.G.R. was told that Defendant had a U-visa and that Defendant could add A.F.G.R. to the U-visa as a relative of Defendant; A.F.G.R. was told that he needed to pay $3,000 to Defendant to start the process of obtaining U.S. immigration documents.

32. On or about the following dates, based on Defendant's materially false and fraudulent representation and promise to A.F.G.R. that Defendant would obtain U.S. immigration documents for A.F.G.R., A.F.G.R. received the following wire transfers from his family in Guatemala so that he could pay Defendant for U.S. immigration documents:

| Date of Wire Transfer | Amount | Location Received |
| --- | --- | --- |
| July 13, 2017 | $3,000 | PLS Check Cashers, 6470 S. 12th Ave., Tucson, Arizona |
| July 17, 2017 | $3,000 | PLS Check Cashers, 6470 12th Ave, Tucson, Arizona |
| July 24, 2017 | $3,000 | PLS Check Cashers, 3563 N. Stone Ave., Tucson, Arizona |

33. On or about the following dates, A.F.G.R. paid the following amounts to Defendant through L.R.M. as a result of Defendant's material false and fraudulent representation and promise that Defendant would provide A.F.G.R. with U.S. immigration documents:

| Date of Payment | Amount |
|---|---|
| July 14, 2017 | $3,000 |
| July 17, 2017 | $6,000 |
| July 18, 2017 | $3,000 |
| July 21, 2017 | $3,000 |
| July 26, 2017 | $3,000 |

34. On or about July 31, 2017, A.F.G.R. met with Defendant at the house of L.R.M. and F.C.M.; At the meeting on July 31, 2017, Defendant told A.F.G.R. that she had received the payments from A.F.G.R. that A.F.G.R. made through L.R.M.

35. On about July 31, 2017, Defendant made a materially false and fraudulent representation and promise to A.F.G.R. that she could obtain a driver's license for A.F.G.R. for an additional $500. A.F.G.R. paid Defendant $500 in cash.

36. A.F.G.R. never received any U.S. immigration documents or a driver's license from Defendant.

**B.M.L.**

37. On or about February 5, 2018, Defendant made a materially false and fraudulent representation and promise to B.M.L. over the phone that Defendant was attorney D.L and that Defendant could obtain a U-Visa for B.M.L. for a fee of $1,500.

38. On or about February 5, 2018, Defendant instructed B.M.L. to deposit the money into a Bank of America account in the name of Defendant's assistant, G.E.de.R, account number ending in 6005.

39. On or about February 6, 2018, B.M.L.'s former boss deposited $1,500 for payment on behalf of B.M.L. along with $500 for his own U.S. immigration documents into Bank of America account number ending in 6005, for a total of $2,000, as instructed by Defendant.

40. Between approximately February 5, 2018, and February 20, 2018, Defendant and B.M.L. spoke on the phone and used text messages, including WhatsApp, to communicate about payment and to send identification documents that Defendant requested as part of Defendant's fraud scheme.

41. Between on or about February 5, 2018, and on or about February 20, 2018, Defendant was in Arizona and B.M.L. was in the Republic of Mexico while B.M.L. and Defendant communicated by phone and text messaging, including WhatsApp text messaging.

42. On or about February 10, 2018, Defendant asked B.M.L. for an additional $350 to put B.M.L.'s family members on the U-Visa.

43. On or about February 10, 2018, B.L.M.'s mother sent $335.00 via MoneyGram as instructed by Defendant, MoneyGram reference number ending in 3123 and ticket number ending in 7390.

44. On the dates set forth below, the Defendant and B.M.L. communicated via WhatsApp text messaging service as follows:

///
///
///

| Date and Time (UTC-7) | From | To | Message/Attachment |
|---|---|---|---|
| February 5, 2018 at 8:26:20 p.m. | B.M.L. | Defendant | Photograph of Birth Certificate of B.M.L. containing name and date of birth. |
| February 5, 2018 at 8:26:35 p.m. | B.M.L. | Defendant | Photograph of Voter ID Card of B.M.L. containing name and date of birth. |
| February 5, 2018 at 8:27:50 p.m. | B.M.L. | Defendant | Photographs of Birth Certificate of W.M.L. containing name and date of birth. |
| February 5, 2018 at 8:28:08 p.m. | B.M.L. | Defendant | Photograph of Mexican Consulate ID Card of W.M.L. containing name and date of birth. |
| February 5, 2018 at 8:32:36 p.m. | B.M.L. | Defendant | Photographs of Birth Certificate Card for M.F.C.L. |
| February 5, 2018 at 8:32:49 p.m. | B.M.L. | Defendant | Photograph of Mexican Voter ID for M.F.C.L. |
| February 5, 2018 at 8:36:24 p.m. | B.M.L. | Defendant | Photographs of Birth Certificate for M.D.R.M. containing name |
| February 10, 2018 at 3:21:28 | Defendant | B.M.L. | Message with name "G.E.d.R." |

| Date and Time (UTC-7) | From | To | Message/Attachment |
|---|---|---|---|
| February 10, 2018 at 8:05:25 | B.M.L. | Defendant | Photograph of Moneygram Receipt in amount of $335 with recipient name of "G.E.d.R." |

45. On or about February 14, 2018, a volunteer immigration advocate in Nogales, Sonora, Mexico went to the law office address of the real attorney D.L. in Tucson, Arizona; as a result, B.M.L. discovered that D.L. did not represent B.M.L.

46. Beginning on or about February 5, 2018 and continuing through on or about May, 2018, B.M.L. paid Defendant approximately $1,835 for U.S. immigration documents.

47. B.M.L. never received any U.S. immigration documents for herself or her family members from Defendant.

**Undercover Law Enforcement Agent**

48. On or about February 20, 2018, B.M.L. told Defendant that an acquaintance would be making an additional payment of $500.00 on B.M.L.'s behalf and that the acquaintance would like to discuss an immigration matter with Defendant; the acquaintance was an undercover law enforcement agent (UC Agent) with the Department of Homeland Security, Homeland Security Investigations.

49. On or about March 2, 2018, and March 5, 2018, Defendant and the UC Agent discussed the payment of funds on behalf of B.M.L. and the immigration issue that the UC Agent was presenting to Defendant.

50. On or about March 5, 2018, Defendant directed the UC Agent to pay the $500 Defendant wanted from B.M.L. by using a Walmart money order or a Moneygram order; Defendant gave the UC Agent the name M.R.L. to use as a payee.

51. On March 5, 2018 at 2:14 pm, the UC Agent sent $500 via money order through Ria Financial Services, operating out of Walmart, to M.R.L., per the Defendant's instructions.

52. About 4:30 pm on March 5, 2018, the UC Agent called Defendant with the pin number and payee name necessary for Defendant to pick up the $500 money order.

53. During the UC's phone conversation with the Defendant on March 5, 2018, Defendant told the UC Agent that she required a payment of $1,500 to start the paperwork for the UC Agent's immigration case.

54. At about 11:12 a.m. on March 6, 2018, an individual signing the name M.R.L. picked up the $500 Moneygram order at the Walmart located at 2565 E. Commerce Center Place, Tucson, Arizona.

55. On March 6, 2018, the Defendant confirmed with the UC Agent that she had received the $500 on behalf of B.M.L. that the UC Agent sent to M.R.L. via Ria Financial Services at Walmart.

56. On or about March 26, 2018, the UC Agent phoned Defendant to set up a meeting to discuss the UC Agent's immigration issue, explaining that his immigration documents had expired.

57. On or about March 28, 2018, the UC Agent met with Defendant at the Park Place mall in Tucson, Arizona. Defendant made materially false and fraudulent representations and promises to the UC Agent that she was an attorney, that her name was D.[L.]., and that she could help the UC Agent renew the UC Agent's immigration permit in exchange for a fee.

58. At this same meeting at the mall on March 28, 2018, Defendant told the UC Agent that she needed $2,000 right away, but that the total payment would be $3,500 for her services. Defendant made materially false and fraudulent representations to the UC Agent that: 1) she could extend the UC Agent's permit; 2)

she had access to consulates and courts; and 2) she could obtain an identification document for the UC Agent from the Arizona Motor Vehicle Division.

59.  At the March 28, 2018, meeting, the UC Agent gave the Defendant $2,000 in cash.

60.  The UC Agent never received any U.S. immigration documents or identification documents from Defendant.

## COUNTS 1 – 10
## 18 U.S.C. §1343
## (Wire Fraud)

The Introductory Allegations in Paragraphs 1 through 3 and The Scheme to Defraud in Paragraphs 4 through 60 are re-alleged and incorporated as to Counts 1 through 10 as if set forth in full herein.

### Execution of Scheme by Wire Communication

61.  On or about the dates listed below, within the District of Arizona, and elsewhere, Defendant ELVIRA CONTRERAS, for the purpose of and as an essential part of executing the scheme to defraud, described in Paragraphs 4 through 60 above, knowingly transmitted and knowingly caused to be transmitted by means of wire or radio communication in interstate or foreign commerce any writings, signs, signals, or sounds, that is, WhatsApp messages in interstate or foreign commerce, as follows:

| Count | Date and Time (UTC-7) | From | To | Message/Attachment |
|---|---|---|---|---|
| 1 | February 5, 2018 at 8:26:20 p.m. | B.M.L. | Defendant | Photograph of Birth Certificate of B.M.L. containing name and date of birth. |

12

| Count | Date and Time (UTC-7) | From | To | Message/Attachment |
|---|---|---|---|---|
| 2 | February 5, 2018 at 8:26:35 p.m. | B.M.L. | Defendant | Photograph of Voter ID Card of B.M.L. containing name and date of birth. |
| 3 | February 5, 2018 at 8:27:50 p.m. | B.M.L. | Defendant | Photograph of Birth Certificate of W.M.L. containing name and date of birth. |
| 4 | February 5, 2018 at 8:28:08 p.m. | B.M.L. | Defendant | Photograph of Mexican Consulate ID Card of W.M.L. containing name and date of birth. |
| 5 | February 5, 2018 at 8:32:36 p.m. | B.M.L. | Defendant | Photograph of Birth Certificate Card for M.F.C.L. |
| 6 | February 5, 2018 at 8:32:49 p.m. | B.M.L. | Defendant | Photograph of Mexican Voter ID for M.F.C.L. |
| 7 | February 5, 2018 at 8:36:24 p.m. | B.M.L. | Defendant | Photograph of Birth Certificate for M.D.R.M. containing name |

All in violation of Title 18 United States Code, Section 1343.

62. On or about the dates listed below, within the District of Arizona, and elsewhere, Defendant ELVIRA CONTRERAS, for the purpose of and as an essential part of executing the scheme to defraud, described in Paragraphs 4 through 60 above, knowingly transmitted and knowingly caused to be transmitted by means of wire or radio communication in interstate or foreign commerce any writings, signs, signals,

13

or sounds, that is, the electronic transmission of funds in interstate or foreign commerce, as follows:

| Count | Date of Wire | Amount | Location Received |
|---|---|---|---|
| 8 | July 13, 2017 | $3,000 | PLS Check Cashers, 6470 S. 12th Ave., Tucson, Arizona |
| 9 | July 17, 2017 | $3,000 | PLS Check Cashers, 6470 12th Ave, Tucson, Arizona |
| 10 | July 24, 2017 | $3,000 | PLS Check Cashers, 3563 N. Stone Ave., Tucson, Arizona |

## COUNTS 11 – 17
## 18 U.S.C. § 1028A(a)(1)
## (Aggravated Identity Theft)

63.     The Introductory Allegations in Paragraphs 1 through 3 and the Scheme to Defraud in Paragraphs 4 through 60 are re-alleged and incorporated as to Counts 11 through 17 as if set forth in full herein.

64.     On or about the dates listed below, in the District of Arizona and elsewhere, the Defendant, ELVIRA CONTRERAS, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another actual person, during and in relation to the offense of wire fraud, in violation of Title 18, United States Code, Section 1343, as set forth in Counts 1 through 7 of this indictment, that is, by transferring, possessing, and using the name and date of birth of the following individuals as described below:

///

| Count | Date and Time (UTC-7) | From and To | Message/Attachment | Predicate/Corresponding Wire Fraud Count |
|---|---|---|---|---|
| 11 | February 5, 2018 at 8:26:20 p.m. | B.M.L. to Defendant | Photograph of Birth Certificate of B.M.L. containing name and date of birth. | 1 |
| 12 | February 5, 2018 at 8:26:35 p.m. | B.M.L. to Defendant | Photograph of Voter ID Card of B.M.L. containing name and date of birth. | 2 |
| 13 | February 5, 2018 at 8:27:50 p.m. | B.M.L. to Defendant | Photograph of Birth Certificate of W.M.L. containing name and date of birth. | 3 |
| 14 | February 5, 2018 at 8:28:08 p.m. | B.M.L. to Defendant | Photograph of Mexican Consulate ID Card of W.M.L. containing name and date of birth. | 4 |
| 15 | February 5, 2018 at 8:32:36 p.m. | B.M.L. to Defendant | Photograph of Birth Certificate Card for M.F.C.L. | 5 |
| 16 | February 5, 2018 at 8:32:49 p.m. | B.M.L. to Defendant | Photograph of Mexican Voter ID for M.F.C.L. | 6 |
| 17 | February 5, 2018 at 8:36:24 p.m. | B.M.L. to Defendant | Photograph of Birth Certificate for M.D.R.M. containing name | 7 |

///

///

15

| | |
|---|---|
| 1 | All in violation of Title 18 United States Code, Section 1028A(a)(1). |

                                    A TRUE BILL

                                    /s/
                                    _____
                                    Presiding Juror

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona

/s/
_____
ROSALEEN O'GARA
JANE L. WESTBY
Assistant U.S. Attorneys

Dated: ____OCT 03 2018____

**REDACTED FOR PUBLIC DISCLOSURE**