MICHAEL BAILEY
United States Attorney
District of Arizona
TIFFANY J. UNDERWOOD
Assistant U.S. Attorney
JANE L. WESTBY
Arizona State Bar No. 017550
Assistant U.S. Attorney
U.S. Attorney's Office
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: tiffany.underwood@usdoj.gov
Email: jane.westby@usdoj.gov
Attorneys for Plaintiff

FILED ✓
RECEIVED                    LODGED
                            COPY

SEP 1 8 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 18-02001-TUC-JGZ (BPV) |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| Elvira Contreras, | |
| Defendant. | |

The United States of America and Defendant, Elvira Contreras, agree to the following disposition of this matter:

## PLEA

## ELEMENTS OF THE OFFENSE

1.     Defendant will plead guilty to Counts 1 and 8 of the Indictment, which include charges of Wire Fraud, in violation of Title 18, U.S.C. § 1343.

2.     Defendant understands the elements of the crimes to whichDefendant is pleading guilty are as follows:

///

///

///

*U.S. v. Contreras*
September 4, 2019
Page 1

Count 1 and Count 8 - Wire Fraud

(1) Defendant knowingly and willfully devised and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations or promises;

(2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

(3) Defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

(4) in advancing or furthering the scheme, the defendant transmitted, or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds.

## TERMS

3.      The Defendant understands that this guilty plea is conditioned upon the following terms, stipulations, and requirements.

### Maximum Penalties

4.      Defendant understands that the maximum penalty for Counts 1 and 8 of the Indictment, Wire Fraud, in violation of Title 18, U.S.C. § 1343, is a fine of up to $250,000, a term of not more than twenty (20) years imprisonment, or both, and a period of not more than three (3) years of supervised release.

5.      Pursuant to the United States Sentencing Guidelines ("Guidelines") issued pursuant to the Sentencing Reform Act of 1984, the Court shall:

(a)      order Defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States Code, Section 3611 and Section 5E1.2(f) of the Guidelines, Defendant establishes the applicability of the exceptions found therein;

(b)      order Defendant to make restitution to any victim of the offense unless, pursuant to Title 18, United States Code, Section 3663A and Section 5E1.1 of the

*U.S. v. Contreras*
September 4, 2019
Page 2

Guidelines, the court determines that restitution would not be appropriate in this case. The Defendant further agrees to pay restitution to all victims listed in the indictment, including those named in counts that are to be dismissed.

6.     Pursuant to Title 18, United States Code, Section 3013, the court is required to impose a special assessment on the Defendant of $100.00 for each offense to which the Defendant is pleading guilty for a total amount of $200.  The special assessment is due at the time Defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

7.     Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which Defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States.  The defendant agrees that he/she has discussed this eventuality with his/her attorney. The defendant nevertheless affirms that he/she wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

Agreements Regarding Sentencing

Counts 1 and 8

8.     The government and Defendant stipulate and agree that the total offense level in the advisory U.S. Sentencing Guidelines for Counts 1 and 8 of the Indictment to which Defendant is pleading guilty is calculated as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| Specific Offense Characteristic (2B1.1(b)(1)(D)) | +6 |
| Misrepresentation as government agent (2B1.1(b)(9)(A)) | +2 |
| Acceptance of Responsibility (§ 3E1.1) | -2 |
| Total Offense Level | 13 |

*U.S. v. Contreras*
September 4, 2019
Page 3

9.    The government and Defendant stipulate that Defendant shall receive a sentence of 18 months in prison for Counts 1 and 8.

10.    Defendant understands that the court is neither a party to nor bound by this agreement and the court has complete discretion to impose the maximum sentence possible for the crimes to which Defendant has pled.  If the court imposes a sentence greater than the maximum term agreed upon by the parties or otherwise rejects the plea agreement, the Defendant may withdraw Defendant's guilty plea as authorized by Rule 11(d)(2)(A), Fed. R. Crim. P.  Defendant understands that Defendant may not withdraw from this plea agreement if the court accepts the agreement and sentences Defendant as follows: 18 months imprisonment.

11.    This agreement is expressly conditioned upon Defendant having an advisory sentencing guideline criminal history placement of no more than Criminal History Category I.  If the Defendant's criminal history category placement exceeds Criminal History Category I, the government reserves the right to withdraw from the plea agreement.

12.    Pursuant to Fed.R.Crim.P. 11(c)(1)(C), provided Defendant complies with the terms of this agreement, the government agrees to not bring further criminal charges against Defendant for any conduct now known to the government related to the allegations in the Indictment.

13.    Defendant and the government agree that this agreement does not in any manner restrict the actions of the government in any other district or bind any other United States Attorney's Office.

### Assets and Financial Responsibility

14.    Defendant shall (i) make a full accounting of all assets, including real and personal property in which the Defendant has any legal or equitable interest; (ii)  permit the U.S. Attorney's office to immediately obtain Defendant's credit reports in order to evaluate Defendant's ability to satisfy any financial obligation that is or might be imposed by the court; (iii) make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of Defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office,

including the Financial Litigation Unit, for any purpose; (iv) cooperate fully with the government and the Probation Officer to execute such documentation as may be necessary to secure assets to be applied to restitution owed by Defendant. Defendant agrees to permit the Probation Officer to provide to the U.S. Attorney's office copies of any and all financial information provided by Defendant to the U.S. Probation Office; and (v) not (and shall not aid and abet any other party to) sell, hide, waste, spend, destroy, transfer or otherwise devalue any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures).

Agreement as to Restitution

15.     Pursuant to Title 18 U.S.C. §§ 3663 and 3663A, Defendant specifically agrees to pay restitution in an amount up to $90,935. The amount of restitution for each victim and the Department of Homeland Security shall not exceed the amounts listed below:

| Victim Initials | Restitution Amount |
|---|---|
| L.R.M. & F.C.M. | $58,100 |
| A.F.G.R. | $18,500 |
| B.M.L. | $1,835 |
| J.G. | $500 |
| DHS | $2,500 |
| N.F. | $9,500 |

16. Pursuant to Title 18 U.S.C. § 3663, Defendant specifically agrees that payment to the Department of Homeland Security shall be made after any payments ordered paid to the victims L.R.M., F.C.M., A.F.G.R., B.M.L., J.G., and N.F. have been paid in full.

17.     Pursuant to 18 U.S.C. § 3163, all monetary penalties, including restitution imposed by the Court, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer

of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not limit the methods available to the United States to enforce the judgment, or preclude the United States from enforcing the full amount of the judgment by any means authorized by law.

Breach of the Agreement.

18.     If Defendant fails to comply with any obligation or promise pursuant to this agreement, including the failure to appear at sentencing, the United States:

a.     may, in its sole discretion, declare any provision of this agreement null and void in accordance with paragraph (21) below and Defendant understands that Defendant shall not be permitted to withdraw the plea of guilty made in connection with this agreement;

b.     may prosecute Defendant for any offense known to the United States for which Defendant is responsible, and Defendant waives any statute of limitations, Speedy Trial Act, and constitutional restrictions for bringing charges after the execution of this agreement;

c.     may argue for a maximum statutory sentence for the offenses to which Defendant has pled guilty.

Plea Addendum

19.     This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal. Accordingly, additional agreements, if any, may not be in the public record.

Waiver of Defenses and Appeal Rights

20.     Defendant waives any and all motions, defenses, probable cause determinations, and objections that the Defendant could assert to the information or indictment, or to the Court's entry of judgment against Defendant and imposition of

U.S. v. Contreras
September 4, 2019
Page 6

sentence upon Defendant providing the sentence is consistent with this agreement. The sentence imposed is consistent with the terms of this agreement provided Defendant receives a sentence of: 18 months imprisonment. Defendant further waives: (1) any right to appeal the Court's entry of judgment against Defendant; (2) any right to appeal the imposition of sentence upon Defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack Defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). Defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the Defendant might file challenging her conviction or sentence in this case. If Defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

Reinstitution of Prosecution

21.     If Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings. Defendant understands that any statements made at the time of the change of plea or sentencing may be used against Defendant in any subsequent hearing, trial or proceeding as permitted by Fed.R.Crim.P. 11(f).

Perjury and Other Offenses

22.     Nothing in this agreement shall be construed to protect Defendant in any way from prosecution for perjury, false declaration or false statement, obstruction of justice, or any other offense committed by Defendant after the date of this agreement.

### Disclosure of Information to U.S. Probation Office

23.     Defendant understands the United States' obligation to provide all information in its file regarding Defendant to the United States Probation Department.

24.     Defendant will cooperate fully with the United States Probation Department. Such cooperation will include truthful statements in response to any questions posed by the Probation Department, including, but not limited to (1) all criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines; (2) all financial information, e.g., present financial assets or liabilities that relate to the ability of Defendant to pay a fine or restitution; (3) all history of drug abuse which would warrant a treatment condition as part of sentencing; and (4) all history of mental illness or conditions which would warrant a treatment condition as a part of sentencing.

### Effect on Forfeiture Proceedings

25.     Nothing in this agreement shall be construed to protect Defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

26.     Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future.

## WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

### Waiver of Rights

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my rights as follows: to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven

U.S. v. Contreras
September 4, 2019
Page 8

guilty beyond a reasonable doubt; to a restitution schedule set by the Court for payment of restitution during any period of incarceration; and, to appeal or file any other challenge to my conviction or sentence.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have been advised by my attorney of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

My guilty plea is not the result of force, threats, assurance or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part and I agree to be bound according to its provisions.

I fully understand that, if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that, if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

I agree that this written plea agreement and any addendum, if any, contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

I am fully capable of understanding the terms and conditions of this plea agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

*U.S. v. Contreras*
September 4, 2019
Page 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Factual Basis</u>

I further agree that the following facts accurately describe my conduct in connection with the offenses to which I am pleading guilty and that if this matter were to proceed to trial the government could prove these facts beyond a reasonable doubt:

Beginning in 2014, and continuing through April, 2018, Defendant, ELVIRA CONTRERAS, intentionally, knowingly and willfully devised a scheme to defraud others to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and with the intentional concealment of material facts, as follows:

In furtherance of the scheme to defraud, beginning about 2014, and continuing through about April, 2018, Defendant knowingly, willfully, and with the intent to defraud, made materially false and fraudulent representations and promises that she could obtain U.S. immigration documents, a contractor's license, and a driver's license (collectively "documents"), and also, legal representation, social security numbers, U.S. citizenship, and tax refunds in exchange for a fee when Defendant knew that she could not and would not provide any such documents, social security numbers, U.S. citizenship, legal representation, or tax refunds for the victims as Defendant falsely represented. Defendant's false statements were material and caused the victims to pay Defendant in advance for the documents, legal representation, social security numbers, U.S. citizenship, and tax refunds. Defendant knew that she could not provide any such services.

More specifically, in furtherance of the scheme to defraud, Defendant made materially false and fraudulent representations and promises to others, including, but not limited to, L.R.M., F.C.M, A.F.G.R., B.M.L., J.G., N.F. (collectively, "the victims"), and an undercover law enforcement agent ("UC Agent") that she could obtain U.S. immigration documents because: 1) she worked for U.S. Immigration and Customs Enforcement (ICE); 2) she knew or worked with immigration attorney D.L.; or 3) she was immigration attorney D.L. The real D.L. is an actual immigration attorney who Defendant impersonated as part of her scheme to defraud.



As a result of Defendant's material and intentional false promises and representations, Defendant intentionally defrauded the victims of funds, and sought and received funds from the UC agent, in an amount up to $90,935.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The victims and the UC Agent never received the U.S. immigration documents, U.S. citizenship, legal representation, social security numbers, contractor's license, driver's license, or $100,000 in tax refunds. Defendant knowingly provided L.R.M. and F.C.M. with social security numbers that were false and fraudulent.

In the execution of her scheme to defraud, Defendant used interstate wire communications. Between approximately February 5, 2018 and February 20, 2018, Defendant caused interstate communications when Defendant executed her fraud scheme using the phone and WhatsApp text messaging to communicate with and B.M.L. while B.M.L. was in Mexico and Defendant was in Arizona.

Count 1
In furtherance of the Defendant's knowing and willful scheme to defraud and to execute it, on February 5, 2018, Defendant caused B.M.L. to send electronically a photo of B.M.L's birth certificate via WhatsApp text messaging to Defendant. Defendant intended to defraud B.M.L. when Defendant falsely told B.M.L. that Defendant could obtain U.S. immigration documents for B.M.L. and that Defendant needed a copy of B.M.L's birth certificate to do so. Defendant's statement to B.M.L. were materially false and caused B.M.L. to send Defendant $1,835 for U.S. immigration documents. At the time of the WhatsApp text message transmitting B.M.L.'s birth certificate, Defendant was in Arizona and B.M.L. was in the Republic of Mexico.

Count 8
In furtherance of the Defendant's knowing and willful scheme to defraud and to execute it, on or about July 13, 2017, Defendant caused A.F.G.R. to receive $3,000 via wire transfer from his family in Guatemala, so that A.F.G.R. could provide said funds to Defendant for immigration documents. Defendant caused the wire transfer by falsely representing to A.F.G.R. that she could provide U.S. immigration documents for A.F.G.R. when the Defendant knew this was not true. A.F.G.R. used the funds to pay the Defendant. The funds were wired from Guatemala to Arizona.

Defendant agrees that the Court shall decide the total amount of restitution owed.

9/18/19.
Date

ELVIRA CONTRERAS
Defendant

*U.S. v. Contreras*
September 4, 2019
Page 11

1  DEFENSE ATTORNEY'S APPROVAL

2      I have discussed this case and the plea agreement with my client in detail and have

3  advised the Defendant of all matters within the scope of Fed. R. Crim. P. 11, the

4  constitutional and other rights of an accused, the factual basis for and the nature of the

5  offense to which the guilty plea will be entered, possible defenses, the consequences of the

6  guilty plea (including the maximum statutory sentence possible), and that the Defendant is

7  waiving the right to appeal or otherwise challenge the conviction and sentence. I have

8  discussed the concept of the advisory Sentencing Guidelines with the Defendant. No

9  assurances, promises, or representations that are not contained in this written agreement

10  have been given to me or to the Defendant by the United States or any of its representatives.

11  I have concluded that the entry of the plea as indicated above on the terms and conditions

12  set forth in this agreement are in the best interests of my client. I agree to make a bona fide

13  effort to ensure that the guilty plea is entered in accordance with all the requirements of

14  Fed. R. Crim. P. 11.

15

16  9/18/19.
   Date

17

18  _____
   WALTER GONÇALVEZ, Esq.
   Attorney for Defendant

19  GOVERNMENT'S APPROVAL

20      I have reviewed this matter and the plea agreement. I agree on behalf of the United

21  States that the terms and conditions set forth are appropriate and are in the best interests of

22  justice.

23                          MICHAEL BAILEY
                          United States Attorney
24                          District of Arizona

25

26  9·18·19
   Date

27                          _____
                          TIFFANY J. UNDERWOOD
                          JANE L. WESTBY
28                          Assistant U.S. Attorneys

   *U.S. v. Contreras*
   September 4, 2019
   Page 12